## GALVIN v. SOUTHERN HOTEL CORPORATION.

## UNITED STATES v. A CERTAIN PARCEL OF LAND AND BUILDING IN CITY OF NORFOLK et al.

### No. 5650.

Circuit Court of Appeals, Fourth Circuit.

Dec. 15, 1947.

George V. Credle, Jr., and Edward L. Breeden, Jr., both of Norfolk, Va. (Breeden & Hoffman, of Norfolk, Va., on the brief), for appellant.

Charles L. Kaufman, of Norfolk, Va., for appellee.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

SOPER, Circuit Judge.

Upon the first appeal in this case we set aside the forfeiture of the lease of a hotel in Norfolk of which the United States had taken possession on December 17, 1943, in proceedings directed to the condemnation of the leasehold interest, as will appear from the opinion of this court, 154 F.2d 970. The only default of the lessee was the failure to pay additional rental to the lessor in the sum of $9,015.17, based on the

gross receipts of the lessee for the year 1943; and as the lessor held bonds of the value of $12,754.39 as security for the lessee's performance of the lease, and as the rental during the Government's occupancy was secure and the District Court had the power and duty to fix the value of the interest taken by the United States and to distribute the proceeds thereof to the persons entitled, we concluded that the rights of the lessor were amply protected without forfeiture of the lease and that the lessee should be given an opportunity to show what compensation he was entitled to receive from the United States for the taking of the leasehold. It was then obvious that the great demand for hotel accommodations due to the emergency of war gave the leasehold interest taken by the United States a value greatly in excess of the rental named in the lease when it was executed in 1934.

On December 16, 1945, while the appeal was pending and the judgment of forfeiture was still in effect, the occupancy of the United States terminated and possession of the premises was surrendered to the lessor. The opinion of this court was handed down on April 9, 1946, and shortly thereafter the lessor petitioned the court to declare a new forfeiture of the lease since the lessee was still in default in the payment of the additional rental for 1943; but at or about the same time, the lessor offered to restore possession of the hotel to the lessee upon the payment of the arrearage. The lessee on his part took the position in his answer to the petition for forfeiture that the occupancy of the hotel by the lessor upon its vacation by the United States constituted a breach of the lease and he asked for damages therefor; but he did not at any time offer to pay the rent in arrears or to take possession of and manage the hotel for the balance of the term which ran to March 1, 1948. Indeed he testified that the operation of the hotel by him during the remainder of the term would have caused him a serious loss.

During the occupancy by the United States and for some additional time, the condemnation proceedings to fix the value of the leasehold taken by the United States were pending. They were not finally concluded until February 15, 1947, when the United States and the parties to the lease agreed to the amounts to be paid by the United States. In accord with this agreement the court adjudged that the sum of $110,000 was full compensation for the use and occupancy by the United States of the hotel and the contents for the two year period, and that the United States should pay the additional sum of $27,500 for the destruction and conversion of personal property in the hotel during the period of its possession. Of the sum of $110,000 so adjudged, the United States had already paid $42,000, that is, $21,000 for each of the two years on account of the rental to the lessor and the balance, that is $68,000, and the additional sum of $27,500 were paid into the registry of the court to await its further order.

The court considered the distribution of the monies after taking evidence and hearing the argument of the parties to this appeal, and decreed (1) that out of the sum of $68,000 the lessor should be paid $25,000, that is, $12,500 for each of the two years of Government occupancy in lieu of the additional rental prescribed in the original lease of 12½% of the gross receipts of the lessee in excess of $75,000, and that the lessee should receive the remainder of the money, that is, $43,000; (2) that the lessor should receive the entire sum of $27,500 paid by the United States for damage to and loss of the contents of the hotel; and, (3) that by reason of the breach of the lease by the lessee it should be declared forfeited as of December 17, 1945, the day on which the United States vacated the premises, and that the lessee should recover nothing for the resumption of possession of the hotel by the lessor on that date. The lessee has appealed from all of these conclusions.

In order to determine how the sum of $68,000 should be divided in harmony with the provision of the lease that required the lessee to pay as additional rental 12½% of the annual gross receipts of the hotel in excess of $75,000, the judge took into account the full occupancy which the hotel would have enjoyed under private management. He made the finding, which

was amply supported by the evidence, that at the rates approved by the Office of Price Administration the gross receipts during the period would have amounted to at least $175,000 per year, and he concluded that the lessor was therefore entitled to the additional yearly rental of $12,500 or $25,000 in all. The sum of $43,000 remaining was awarded to the lessee for his share of the value of the leasehold. We think that this allotment was correct.

In opposition the lessee contends in the first place that the lessor was not entitled to any share of the putative gross receipts because there were in fact no gross receipts or receipts of any kind from the occupants who used the rooms free of charge for the benefit and with the consent of the United States during its tenancy; and in the second place that if the lessor is to be given any share in the money in addition to the yearly rental of $21,000, it should bear the same ratio to the lessee's share as the net earnings of the lessee in 1943, when also the rooms in the hotel were fully occupied, bore to the amount of the additional rent payable in that year to the lessor. On the latter theory the sum of $68,000 would have been divided, one-seventh to the lessor and six-sevenths to the lessee.

Neither of these contentions can be sustained. That which was taken by the United States from the lessee was the right to occupy and use the hotel and its contents for two years, that is, a part of his leasehold interest; and it was necessary, in order to fix the sum to be paid to him by the United States, to ascertain the market value of the interest taken. That value necessarily depended not only upon the character of the building as a hotel but also upon the probable demand for hotel accommodations during the period; and the sum arrived at was subject to the obligation of the lessee to pay to the lessor the rent specified in the lease which included not only the fixed rental of $21,000 per year but also 12½% of the gross receipts in excess of $75,000 per year. It is true that the amount paid by the United States for the taking represented the market value of the two year leasehold and was not composed in any part of gross receipts;

but the amount was arrived at, as the testimony of the expert witnesses shows, by estimating what the gross receipts and expenses of the hotel would have been if the lessee had continued to operate it. What these gross receipts would have been was easily susceptible of calculation because the hotel rates were fixed by public authority and the amount of occupancy, as all the witnesses agreed, would not have been less than 90%. The figure of $175,000, adopted by the District Judge, was therefore conservative. The inequitable contention that the entire amount paid by the United States in excess of the fixed rent should be paid to the lessee comes with little force from one who upon the former appeal was relieved from the forfeiture of his entire interest in the property by the application of equitable principles.

Nor do we think it would be equitable, as the lessee contends, to relate the distribution of the money to the profits which, judging by the results obtained by him in 1943 according to his figures, he would have made if he had remained in business in 1944 and 1945. It may be noted in passing that the lessee's figures for 1943 would not be a safe augury for the probable results of 1944 and 1945 because the evidence clearly shows that the lessee's books of account were incomplete and insufficient for a satisfactory audit; and that the costs of operation were increasing as the war progressed while the ceiling on the room rents remained. The complete answer to the contention, however, is that the additional rental payable to the lessor under the lease was not based upon profits to be gained by the lessee but upon a percentage of his gross receipts, and the potential gross receipts, as we have seen, were ascertainable with almost mathematical certainty.

We find nothing in these conclusions in variance with the rule laid down in United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390, as the lessee seems to contend. It is there said that the just compensation to be paid for taking part of an unexpired term of a lease is to be determined by ascertaining the market value of the leasehold for the period in question, and that, while con-

sequential damages may not be considered in ascertaining this market value, the long term rental value, the kind and location of the building, and its susceptibility to various uses are among the many factors that may be taken into consideration. In any event, we are not now concerned with the amount of compensation payable by the United States for the taking—that was fixed by agreement of the parties—but only with the division of the money between the parties to the lease.

■ The allocation to the lessor of the entire sum of $27,500 paid by the United States for damages to the contents of the hotel must also be sustained. The lessee objects on the ground of testimony on his behalf tending to show that when the United States took over the hotel it contained personal property belonging to him of a value in excess of $15,000. There is countervailing evidence which casts doubt upon this figure, but aside from this, the ground upon which the District Judge based his decision is well taken. The lessee was bound by a covenant in the lease of March 1, 1934, to keep all furniture, fixtures, carpets, appointments, cold storage, apparatus, machinery, oilers, elevators and other equipment in as reasonably good condition as it was then. He failed to live up to this obligation. The evidence indicates and the District Judge found that when the United States took possession in 1943, the condition of the contents of the hotel was so poor that the estimated cost of restoring it to its condition in 1934 would greatly exceed the sum of $15,000. The conclusion of the District Judge, that any claim of the lessee to a portion of the money paid by the United States was more than offset by the damages due the lessor from the failure of the lessee to comply with the covenants of the lease, gave the latter all that he was entitled to.

■ Finally, there was no reversible error in the judgment of the court that the rights of the lessee under the lease should be declared forfeited as of the date when the United States surrendered possession to the lessor· At that time the prior forfeiture declared by the District Court as of June 28, 1944, was in effect since it had not been stayed pending the appeal to this court and it was not set aside until the judgment of the District Court was reversed. The mandate of this Court went down on April 29, 1946, and on May 6, 1946, the lessor made a formal offer to return the hotel to the lessee upon payment of the arrearage in rent. He failed to accept this offer and from his testimony at the hearing, it is plain that he did not desire to repossess the hotel but believed that it would not be profitable for him to do so. Under these circumstances, we think it was within the court's discretion to declare the forfeiture. The situation differed greatly from that which existed when the case was first before us. In the meantime, the original forfeiture had been set aside and the right of the lessee to share in the substantial compensation to be paid by the United States had been established and nevertheless he was unwilling to pay the arrearages in rent or to resume the possession and operation of the hotel. The action of the District Court in declaring a new forfeiture of the lease was fully justified.

We need not examine the question whether the new forfeiture should have been made effective on May 6, 1946, when the lessee failed to accept the lessor's tender of possession after the reversal of the judgment of the District Court, rather than on December 17, 1945, when the United States vacated the hotel. Whether the lessor's resumption of possession of the hotel on December 17, 1945, while the judgment of the District Court was still in effect, gave the lessee a right of action against the lessor when that judgment was reversed, presents a barren inquiry. The lessee failed to show either that he was ready and willing to take possession of the property when the Government moved out, or that he suffered any loss from the lessor's occupancy.

Affirmed.