In this action, plaintiff Georgia-Pacific alleges the inverse condemnation of approximately 9000 acres of surface and subsurface coal-bearing lands owned by it in two West Virginia counties. Large portions of the subsurface acreage are subject to coal leases which Georgia-Pacific has granted from time to time. One such lease, with a present value aggregating perhaps several hundreds of thousands of dollars, is held by movant Virginia Crews. In a decision dated November 6, 1980, the trial judge found, inter alia, that the lands subject to the Virginia Crews coal lease had been inversely condemned by the Government as of March 28, 1975. (The trial judge also rejected other taking claims which had been asserted by Georgia-Pacific with respect to other nearby parcels.) The trial judge went on to find, by logical implication, that there had also been a taking of Virginia Crews’ leasehold interest in the parcel as of the same date. The court has not yet reviewed the trial judge’s decision nor has any computation of damages yet been attempted. In short, we are still in the liability phase of the case. In its motion dated March 27, 1981, Virginia Crews moved under our Rule 65(a)(2) for leave to intervene in this action as a party plaintiff, seeking "just compensation” for the inverse condemnation of its leasehold interest as found by the trial judge.
*822 Rule 65(a)(2) provides in pertinent part: "Upon timely application, anyone may be permitted by the court ... to intervene in an action . . . where the applicant has a pecuniary interest in the subject matter of the main action.” (Emphasis supplied.) The Government contends that the two prerequisites specified by the Rule, pecuniary interest and timeliness, have not been satisfied. We disagree.
1. Pecuniary interest. There is a lack of authority construing the expression "pecuniary interest” as used in our Rule 65(a)(2). Nonetheless, we derive useful guidance from Judge Spottswood Robinson’s apt observation: "The right of intervention . . . implements the basic jurisprudential assumption that the interest of justice is best served when all the parties with a real stake in a controversy are afforded an opportunity to be heard [in one arena].” Hodgson v. United Mine Workers, 347 F.2d 118, 130 (D.C. Cir. 1972). The expression "pecuniary interest” should be construed flexibly so as to effectuate this underlying objective.
In essence, the case before us involves a controversy over the alleged taking of a piece of land and the just compensation therefor. Plainly enough, a lessee of valuable mineral deposits in the land does have a "real stake” in the ultimate resolution of the dispute, i.e., whether a taking is found and whether damages will be awarded. See generally Foster v. United States, 221 Ct. Cl. 412, 607 F.2d 943 (1979). The "interests of justice” would be served by allowing Virginia Crews to intervene, because it has both the stake and, apparently, the wherewithal to make an effective presentation of the issues during the remaining stages of this litigation.
Thus, Virginia Crews does indeed have a "pecuniary interest in the subject matter of the main action” within the intendment of our procedural Rule.[1]
*823 2. Timeliness. As with "pecuniary interest,” the expression "upon timely application” has also not been authoritatively construed in our prior decisions. However, there is considerable authority construing the same expression as used in the Rule on Intervention in the Federal Rules of Civil Procedure, Rule 24. We turn to these authorities for the appropriate guidelines in pursuing our own analysis.
To begin, it is well settled that the question of timeliness is addressed to the sound discretion of the court. See, e.g., NAACP v. New York, 413 U.S. 345, 366 (1973); Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir.), cert. denied, 439 U.S. 837 (1978). The determination of timeliness is to be made from a weighing of all the relevant facts and circumstances. See, e.g., NAACP, supra; Hodgson, supra, at 129. The amount of time which has elapsed since the inception of the lawsuit, although pertinent, is not disposi-tive. See, e.g., Stallworth v. Monsanto Co., 558 F.2d 257, 266 (5th Cir. 1977); Hodgson, supra. For example, in Hodgson, supra, Judge Robinson granted a motion to intervene after more than seven years had elapsed from the beginning of the lawsuit. By far the most important consideration is the "relative prejudice to the existing parties and the would-be intervenor”: in the first instance, the prejudice which would result from granting the motion; in the second, the prejudice, or loss of benefit, which would result from issuing *824 a denial. United States v. Marion County School District, 590 F.2d 146, 148 (5th Cir. 1979); accord, Spring Construction Co. v. Harris, 614 F.2d 374, 377 (4th Cir. 1980); Alaniz, supra; Hodgson, supra. We now apply these guidelines to the case at bar.
We note initially that Georgia-Pacific filed its petition in this court on August 22, 1975 and that Virginia Crews did not file its motion to intervene until March 27, 1981, an interval of almost six years. Moreover, Virginia Crews has not provided any explanation for the delay.
The passage of time, however, should be placed in context. From the commencement of the lawsuit until January 1978, the parties merely engaged in pre-trial motions and some discovery. Then, in a decision of January 25,1978, the court suspended all proceedings in this case in deference to a parallel action underway in the federal district court for the Southern District of West Virginia. Georgia-Pacific Corp. v. United States, 215 Ct. Cl. 354, 568 F.2d 1316, cert. denied, 439 U.S. 820 (1978). The suspension remained in effect until March 1979. Six months later, a trial was held on the issue of liability. More than another year elapsed before the trial judge entered his decision in November 1980. In other words, these have been unusually protracted proceedings, during which there have been many long periods of inactivity since the case began.
It is also worth emphasizing that, irrespective of the almost six years passage of time, in procedural terms this case has not yet moved beyond the liability phase. The parties have still to bring before the court their exceptions to the trial judge’s report and damages have yet to be determined, a not inconsiderable task in a taking case.
Most importantly, the Government has failed to adduce any convincing theory as to how it would be prejudiced by the granting of the motion to intervene. For instance, there is nothing to suggest that the Government would somehow find it more difficult to defend in the original action brought by Georgia-Pacific were the motion to intervene granted. We have no reason to suspect that Virginia Crews is engaged in any sort of manipulation which it would be desirable to circumvent. Virginia Crews apparently does not seek to relitigate any issues already decided during the *825 liability phase of the case or to raise any new liability issues not touched upon by the trial judge. Instead, its claim for damages — just compensation — is premised entirely upon the findings and conclusions of the trial judge. In short, we have examined the problem from many different angles and are unable to detect what possible prejudice the Government might suffer. This, for us, is the decisive consideration, because it is quite clear that Virginia Crews would be greatly benefited by being permitted to intervene herein, rather than having to litigate completely from scratch in a separate lawsuit.
We find, therefore, that on the balance of relevant considerations, the scales tip in favor of Virginia Crews on the issue of timeliness.
In sum, we hold that, contrary to the Government’s assertion, the prerequisites of Rule 65(a)(2) are satisfied.
Accordingly, after consideration of the submissions of the parties, without oral argument of counsel, Virginia Crews’ motion to intervene is granted. Its petition is deemed filed nunc pro tunc as of March 27, 1981, the date when it filed its motion to intervene with its proposed petition attached thereto.

 The Government urges that the movant has no compensable interest in the property in issue. That argument is premature. The finding of the trial judge that movant had a property interest taken is facially sufficient to establish a pecuniary interest under Rule 65(aX2).
The court is aware that there are facts bearing on the issue of whether Virginia Crews has a compensable interest in the property. In addition to the arguments raised by the Government against compensation, there are facts found by the trial judge that may affect the outcome whether Virginia Crews has a compensable interest in the property. For example, the trial judge found that Virginia Crews *823 acquired the property in issue by purchasing all the stock of its predecessor after the date of the alleged taking. The trial judge further found that because Virginia Crews knew prior to the purchase that it was unlikely the Government would permit mining on certain portions of the property, 25 percent of the purchase price was paid in bonds that would be honored by Virginia Crews only if mining was allowed on those portions. These facts do not go to the issue of whether the property in question was taken, but whether Virginia Crews had a direct interest in the property that was taken on the taking date. A merits determination of whether Virginia Crews has a compensable interest is not appropriate at this time.
If the court agrees with the trial judge and holds that the property leased by Georgia-Pacific to Virginia Crews was taken, then a remand for a quantum determination under Rule 131 will be necessary. Under well established rules of taking law, both the lessor and lessee would be entitled to share in that award according to their respective interests. See, e.g., Calvin v. Southern Hotel Corp., 164 F.2d 791 (4th Cir. 1947). At that time, it would be appropriate for the parties to prove they had a compensable interest in the property that was taken. Thus, in the instant case, compensation would be due the lessor Georgia-Pacific for whatever reversionary interest (if any) was taken and to the lessee Virginia Crews for whatever compensable leasehold interest was taken. See generally Nichols, Eminent Domain § 5.3[1] (3d ed. 1980). Therefore, upon remand, the parties will litigate both quantum and their relative share of that quantum.