Charlene ACKLEY, et al., Plaintiffs,

v.

UNITED STATES, Defendant,

and

the Hoopa Valley Tribe of Indians,
Defendant-Intervenor.

No. 460–78.

United States Claims Court.

April 30, 1987.

See also 12 Cl.Ct. 36.

Francis B. Mathews, Eureka, California, attorney of record, for plaintiffs. Kenneth Mathews, of counsel.

Pamela S. West, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

Thomas P. Schlosser, Seattle, Wash., atty. for The Hoopa Valley Tribe of Indians, defendant-intervenor.

Evelyn Conroy Sparks, Portland, Or., atty. for Norman L. Giffen, et al., plaintiff-intervenors.

## OPINION

MARGOLIS, Judge.

Norman L. Giffen, Claire Rose Guyatt, Mary L. Hastings, Mary Ann Hygelund,

and Carol Jane Weis, plaintiff-intervenors, have filed a motion to intervene of right in this action, pursuant to RUSCC 24(a). After considering the entire record and hearing oral argument, the court denies the motion.

## FACTS

Plaintiff-intervenors claim that they possess ¼ Yurok Indian blood and are lineal descendants of Indian allottees of the Hoopa Valley Reservation. Plaintiff-intervenors, who are siblings, allege that they were born and raised in Alaska, adopted at an early age by non-Indians, have never lived on the Hoopa Valley Reservation, and have generally been "alienated" from Reservation life. Plaintiff-intervenors are not eligible for membership in the Hoopa Valley Tribe and are not enrolled with any other Indian tribe. To date, the Yuroks have not formally organized into a government with established membership criteria.

In 1972, plaintiff-intervenors first learned of their Yurok Indian heritage, and they subsequently contacted the Bureau of Indian Affairs (BIA) in 1974 "to investigate the possibility that they were beneficiaries of the *Short* fund." Plaintiff-Intervenors' Motion at 15. Plaintiff-intervenors applied to vote in the election of the Yurok Interim Governing Committee, when the Yuroks were contemplating organizing a tribal government. However, their application to vote was finally denied by the BIA in 1979 because they were not plaintiffs in *Short* or *Ackley*, and were not listed on official Hoopa Valley Reservation censuses.

Plaintiff-intervenors claim that if permitted to intervene, they would qualify as Indians of the Reservation because their alleged full brother, Francis O'Connor (plaintiff no. 70) qualified under Eligibility Standard A on October 23, 1985 in *Charlene Ackley, et al. v. United States*, No. 460–78 (Cl.Ct. filed Oct. 20, 1978). Plaintiff-intervenors filed their motion for intervention on July 29, 1986, and also instituted an independent suit in this court, *Norman L. Giffen, et al. v. United States*, No. 746–85L (Cl.Ct. filed Dec. 19, 1985), seeking substantially similar relief as that sought by plaintiffs in *Short* and this case.

## DISCUSSION

On April 23, 1976, the Court of Claims ordered in *Short* that "[t]o the extent that this action has been treated as a class action, it is ordered that the class is hereby closed; that no notice shall issue to any alleged absent member of the class of plaintiffs and that no further interventions in this action shall be permitted." *Short v. United States*, 209 Ct.Cl. 777, 778 (1976). This order set aside that portion of the trial judge's July 14, 1975 order requiring that notice be given to the absent members of the class. A motion for rehearing to alter and amend the order closing the class was denied by the court on June 25, 1976. *Short*, 209 Ct.Cl. at 778.

In 1977, a group of claimants, who later became the *Ackley* plaintiffs, unsuccessfully attempted to intervene or appear as members of the class in *Short*. Their motion was denied by the trial judge on June 23, 1977, "on the authority of the order of the court dated April 23, 1976 which in part provided 'that no further interventions in this action shall be permitted'." On September 30, 1977 the court denied a request for review of this decision, and the claimants who were denied intervention subsequently brought this separate suit. The five plaintiff-intervenors here have moved to intervene in *Ackley* eight years after it was filed, ten years after the class was closed in the related *Short* case, and twenty-three years after *Short* was originally filed.

Plaintiff-Intervenors contend that they should be permitted to intervene as of right under RUSCC 24(a), which states:

> *Upon timely application* anyone may be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(emphasis added).

Both the defendant and the defendant-intervenor assert that the plaintiff-inter-

venors' motion to intervene is not timely. The court agrees that the motion is untimely.

A motion to intervene in a pending action must be timely made, and timeliness is a threshold question committed to the sound discretion of the trial court. *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). Absent an abuse of discretion, the determination of the trial court will not be disturbed on review. *Id.* at 366, 93 S.Ct. at 2603. A determination of timeliness is based upon a consideration of all relevant facts and circumstances, and the amount of time elapsed since the suit was filed, although pertinent, is not necessarily dispositive. *Georgia-Pacific Corp. v. United States*, 228 Ct.Cl. 821, 823 (1981).

All parties agree that the test employed in *Cheyenne-Arapaho Tribes v. United States*, 1 Cl.Ct. 293, 295 (1983), derived from *Sumitomo Metal Industries, Ltd. v. Babcock & Wilcox Co.*, 669 F.2d 703, 707 (C.C.P.A.1982), is applicable in making a timeliness determination under RUSCC 24(a). The factors which must be weighed include:

(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene;

(2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention;

(3) existence of unusual circumstances militating either for or against a determination that the application is timely.

*Cheyenne-Arapaho*, 1 Cl.Ct. at 295. The court thus evaluates the plaintiff-intervenors' motion under the three-part *Cheyenne-Arapaho* test.

### A. Plaintiff-Intervenors Delayed Unreasonably In In Moving for Intervention

Plaintiff-intervenors contend that their July 29, 1986 motion is timely because they did not know that they could qualify as Indians of the Reservation until Francis O'Connor was actually qualified by this court on October 23, 1985. It is nonetheless clear that plaintiff-intervenors knew, or reasonably should have known, of their right to intervene in *Short* no less than twelve years ago. Carol J. Weis admits that she began investigating the plaintiff-intervenors' interest in the *Short* litigation in 1974. Moreover, Carol J. Weis also knew of her Yurok Indian heritage as early as 1972 when she applied for a share in the Indians of California Judgment Funds. Affidavit of Carol J. Weis.

Plaintiff-intervenors' argument that they did not know of their interest or right to intervene in this action until 1985 when Francis O'Connor was qualified as an Indian of the Reservation is untenable. Plaintiff-intervenors were aware of their potential interest two years before the class was closed in *Short* in 1976 and four years before this case was filed, and they still waited eight more years to move for intervention. Since a substantial period of time has elapsed since plaintiff-intervenors first knew of their right to intervene, this first factor weighs heavily against the movants. *Cheyenne-Arapaho*, 1 Cl.Ct. at 296.

### B. Prejudice to Present Parties Outweighs Prejudice to Movants

■ The prejudice to the rights of the existing parties, if the motion to intervene is granted, outweighs the prejudice to the plaintiff-intervenors in denying the motion. While RUSCC 24(a) on its face addresses only the rights of the applicant in weighing prejudice, it is also appropriate to determine prejudice to existing parties when evaluating a motion's timeliness. *Id.*

Permitting additional rounds of intervention motions, more than a decade after the Court of Claims closed the class in *Short*, would serve to prejudice the rights of existing parties by further delaying the resolution of this litigation. The Court of Claims closed the class in *Short* over a decade ago knowing full well that potential plaintiffs were excluded. *Short*, 209 Ct.Cl. at 777–

78. Some 400 plaintiffs have already died awaiting the conclusion of this litigation, which will undoubtedly be delayed if additional groups of claimants are now permitted to intervene in *Ackley.*

Plaintiff-intervenors argue that they have an interest in the subject matter of the action that will be prejudiced if the motion is denied. However, the plaintiff-intervenors have filed a separate action in this court, *Giffen, et al.,* No. 746–85L (Cl.Ct. filed Dec. 19, 1985), and have failed to demonstrate how a denial of intervention in *Ackley* would inhibit the pursuit of their claim in *Giffen.*

Plaintiff-intervenors' rights will not be prejudiced by denying intervention in this action. Allowing further interventions would effectively overrule numerous prior court orders on this very issue, and it would serve to prejudice the present parties' interests. As the court stated in *Cheyenne-Arapaho,* and equally applicable here, "(i)n contrast, the prejudice to the movants by denying intervention, which is the sole result of movants' sitting on their rights, is slight, if indeed, existent." *Cheyenne-Arapaho,* 1 Cl.Ct. at 296.

## C. *There Are No Unusual Circumstances Requiring Intervention*

■ Plaintiff-intervenors contend that unsual circumstances, namely their residence off the Reservation, their adoption by non-Indians, and conduct of the BIA in failing to inform them of their legal rights, support a finding that their motion to intervene is timely. This argument is without merit. The situation of plaintiff-intervenors is not significantly different or more unusual than other plaintiffs in *Short* or *Ackley* who filed suit or intervened in a timely manner. Many of the *Short* and *Ackley* plaintiffs have similarly been adopted by non-Indians, have lived off the Reservation, and have had little contact with the Reservation.

■ Plaintiff-intervenors also claim that the BIA contributed to the delay in the filing of their motion by failing to inform them of their interest in the litigation. The BIA, although a trustee for Indian tribes and individuals, is not necessarily obligated to pursue plaintiff-intervenors' legal rights on their behalf against itself. To be sure, the BIA may not illegally prevent a plaintiff from legitimately investigating their claims, but one's own failure to adequately pursue legal rights is not an unusual circumstance or basis for justifying an untimely intervention.

■ Plaintiff-intervenors' final contention, that the BIA misled them into concluding they were not Indians of the Reservation by denying them the opportunity to vote in the elections of the Yurok Interim Governing Committee, is also without merit. When the BIA denied plaintiff-intervenors' applications to vote, it clearly stated that the determination would not affect an individual's future membership in a "Yurok Tribe," if a tribal government was organized. Tribal citizenship or membership is determined by the tribal government's own standards. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 1684 n. 32, 56 L.Ed.2d 106 (1978). Plaintiff-intervenors' applications to vote were denied not because there was a question about their Indian ancestry, but simply because they were not plaintiffs in *Short* or *Ackley* or included on Reservation censuses as required by the election regulations. Therefore, the BIA's action cannot be construed as a barrier inhibiting plaintiff-intervenors' assertion of their claimed rights as Indians of the Reservation.

## CONCLUSION

In light of the considerable delay in filing their motion to intervene, prejudice to the rights of existing parties through further delay of the resolution of this litigation, and the absence of unusual circumstances militating in favor of movants' intervention, plaintiff-intervenors' motion is untimely and is therefore denied.