WESTERN SHOSHONE NATIONAL COUNCIL, South Fork Band, Winnemucca Indian Colony and Dann Band Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 03–CV–2009 (RJL).

United States District Court, District of Columbia.

July 30, 2004.

Albert A. Foster, Jr., Dillingham & Murphy LLP, Washington, DC, for Plaintiffs.

Edward J. Passarelli, DOJ—Environment & Natural Resources Div. General Litigation Section, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court is the defendant's Motion to Transfer, or in the Alternative, Dismiss. After consideration of the defendant's motion, the plaintiff's opposition, and the entire record herein, the Court GRANTS the defendant's Motion to Transfer. Accordingly, Counts I and III of the plaintiffs' complaint will be transferred to the United States District Court for the District of Nevada and that Counts II, IV, V, and VI of the plaintiffs' complaint will be transferred to the United States Court of Federal Claims.

### BACKGROUND

The plaintiffs in this lawsuit are the Western Shoshone National Council,[1] the South Fork Band, the Winnemucca Indian Colony, and the Dann Band (the "Western Shoshone"). This litigation arises out of a long-standing dispute over sixty million acres of land, primarily located in Nevada, but extending into California, Idaho, and Utah. In 1863 the United States acknowledged Western Shoshone claims to these disputed lands in the Treaty with the Western Shoshone, Oct. 1, 1863, U.S.-W. Shoshone, 18 Stat. 689.[2] In 1951, the Western Shoshone sued the U.S. before the Indian Claims Commission ("ICC") for

---

1. The Western Shoshone National Council contends that they are the governing body of the Western Shoshone Nation. The Western Shoshone Nation is not a federally recognized tribe but claims to represent the interests of certain Western Shoshone tribes and bands.

2. This treaty is also referred to as the Treaty of Ruby Valley.

a "taking of the lands," which, they claimed, entitled them to damages.[3] In 1977, the ICC ruled in favor of the Western Shoshone and awarded them $26 million for both the value of the land as of the late 1800s and for minerals taken from the land. *See Te–Moak 2,* 18 Cl.Ct. 82, 83–84 (1989). The Western Shoshone, however, repudiated the verdict as it did not account for changes the Western Shoshone had made to their legal position four years earlier.[4] *Id.*

In the instant complaint, the Western Shoshone seek a particular form of relief in each of the six counts they have pled: quiet title of all lands delineated by the Treaty with the Western Shoshone under the theory that property rights to those lands have never been litigated (Count I); a declaratory judgment holding that all decisions rendered by the ICC against the Western Shoshone are void for lack of subject matter jurisdiction or for failure of due process (Count II); quiet title on thirty-six million acres of land granted to the Western Shoshone under the Treaty with the Western Shoshone under the theory that title to those thirty-six million acres was never subject to litigation in front of the ICC (Count III); a declaratory judgment awarding them back interest on money previously awarded to them by the ICC (Count IV); a declaratory judgment awarding them royalties for past, present, and future use of their land by the government (Count V); and an accounting by the United States for all funds coming into the government's possession for the benefit of the Western Shoshone Nation under the theory that the government has a fiduciary duty to the Western Shoshone (Count VI).

■ The government contends that venue for the quiet title action lies in the district in which the land is located and thus moves this Court to transfer the two quiet title counts to the District of Nevada.[5] Def.'s Mem. Supp. Mot. Transfer at 2. The Western Shoshone generally oppose transfer, but fail to explain why venue is proper in this Court. Pl.'s Mem. P. & A. Opp'n at 2. In addition, the government contends that there is no relevant waiver of sovereign immunity such that Counts IV, V, and VI can be brought in this Court. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607

---

**3.** In *Shoshone Indians v. United States,* 11 Ind. Cl. Comm. 387 (1962), the ICC found that the Western Shoshone people were separate from the rest of the Shoshone people and that the Te–Moak bands represented the Western Shoshone people. *Shoshone Indians,* 11 Ind. Cl. Comm. 387 at 446; *see also Te–Moak Bands of W. Shoshone Indians of Nev., ex rel. W. Shoshone Nation of Indians v. United States ("Te–Moak 2"),* 18 Cl.Ct. 82, 83–84 (1989); *T–Moak Bands of W. Shoshone Nation ("Te–Moak 1"),* 40 Ind.Cl.Comm. 318 (1977), *aff'd,* 219 Ct.Cl. 346, 593 F.2d 994, *cert. denied,* 444 U.S. 973, 100 S.Ct. 469, 62 L.Ed.2d 389, (1979).

**4.** While litigation in the ICC was pending, the Te–Moaks became convinced that title to their lands had never actually been lost and unsuccessfully attempted to change their legal position accordingly. *Bands of W. Shoshone Indi-* *ans ex rel. W. Shoshone Nation v. United States,* 40 Ind. Cl. Comm. 318 (1977), *aff'd,* 219 Ct.Cl. 346, 593 F.2d 994, *cert. denied,* 444 U.S. 973, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979). The court in *Temoak Band of Western Shoshone Indians of Nevada v. United States,* 219 Ct.Cl. 346, 593 F.2d 994, 996 (1979), explained that this was a "natural reaction to a visible change in legal climate." Indeed, by the 1970s, Indian groups claiming to own large tracts of land were obtaining settlements favorable to them, unlike the 1940s, when the pursuit of a money award was the only hope for recovery. *Id.*

**5.** The government cites 28 U.S.C. § 1402(d), which states that all quiet title claims brought under 28 U.S.C. § 2409, such as the plaintiffs', "shall be brought in the district court of the district where the property is located or, if located in different districts, in any of such districts."

(1980); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Finally, the government contends that this Court does not have subject matter jurisdiction over the Western Shoshone's second count seeking a declaratory judgment voiding all previous ICC rulings, as all ICC rulings must be appealed to the Court of Federal Claims. Accordingly, the government moves this Court to transfer these counts to the Court of Federal Claims. Def.'s Mem. Supp. Mot. Transfer at 10, 13. The Western Shoshone only oppose the transfer of the sixth count. Pl.s' Mem. P. & A. Opp'n at 1. For the following reasons, the Court concludes that a transfer of the Western Shoshone's second, fourth, fifth, and sixth Counts to the Court of Federal Claims, and a transfer of the first and third Counts to the United States District Court for the District of Nevada is warranted.[6]

## ANALYSIS

### A. *Declaratory Judgment and Accounting Claims*

■ The government seeks to transfer Counts II, IV, V, and VI to the United States Court of Federal Claims, pursuant to 28 U.S.C. § 1631, which provides in relevant part: "whenever a civil action is filed in a court...and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed." Count II seeks to void all ICC judgments concerning the land currently at issue in this case pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. However, all Rule 60(b) motions "must be brought in the court which rendered the original judgment." *Goodwin v. Home Buying Inv. Co.,* 352 F.Supp. 413, 416 (D.D.C.1973) (quoting *Taft v. Donellan Jerome, Inc.,* 407 F.2d 807, 809 (7th Cir. 1969)); *see also* 7 James Wm. Moore et al., Moore's Federal Practice ¶ 60.33 (2d ed.1968). Since the judgment in question was rendered by another court, this Court lacks subject matter jurisdiction to void it. Moreover, because the Western Shoshone could have appealed the ICC judgment in the Court of Federal Claims, that Court is best situated to review this claim. Accordingly, Count II will be transferred to the Court of Federal Claims.

■ Likewise, the government contends that the only waiver of sovereign immunity relevant to Counts IV, V, and VI requires that they also be brought in the Court of Federal Claims. *Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Congress has indicated that the Court of Federal Claims is the only court with jurisdiction over claims against the United States that seek compensation exceeding $10,000, excluding those claims based in tort). Although the Western Shoshone consent to the transfer of Counts IV and V, they oppose transfer of Count VI, arguing that this Court has jurisdiction to order an accounting pursuant to the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 702, 704.

Section 704 of the APA provides that "every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy

---

**6.** According to 28 U.S.C. § 1292(d)(4)(A), Federal Circuit precedent is binding on this Court on transfer issues. That section states, in relevant part, that "the United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States...granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title." Moreover, under Federal Circuit precedent, district courts may transfer into the Court of Federal Claims "less than all of the claims in an action." *United States v. County of Cook, Ill.* 170 F.3d 1084, 1089 (Fed.Cir.1999).

in any court shall be subject to judicial review." 5 U.S.C. § 704. However, section 704 was not intended to grant general review of agency opinions to district courts. As the Supreme Court itself noted: "[section 704] does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen*, 487 U.S. 879 at 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (quoting *Attorney General's Manual on the Administrative Procedure Act* § 10(c), p. 101 (1947)). Because the Court of Federal Claims has jurisdiction over the accounting claim,[7] this Court does not have proper jurisdiction pursuant to the APA.

■ Finally, this Court finds that it is in the interest of justice to transfer the Western Shoshone's accounting claim to the Court of Federal Claims, which will already be evaluating the challenge to the validity of the ICC's earlier ruling and the status of the disputed lands. To rule otherwise would require this Court to duplicate the efforts of the Court of Federal Claims with respect to these predicate issues. Severance, under such circumstances is, at a minimum, inadvisable. *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (stating that multiple litigation was unnecessary where one litigation would suffice); *Far West Fed. Bank, S.B. v. Off. of Thrift Supervision*, 930 F.2d 883, 891 (Fed.Cir.1991) (stating that "in today's climate of burgeoning litigation and strained resources, duplication of litigation serves no congressional purpose."); *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 626 (D.C.Cir.1975) (stating that "sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided."). Accordingly, Count VI will be transferred to the Court of Federal Claims along with Counts II, IV, and V.

### B. The Western Shoshone's Quiet Title Claims

■ The government also seeks to transfer the Western Shoshone's quiet title counts (Counts I and III) to the United States District Court for the District of Nevada as permitted by 28 U.S.C. § 1406(a). Pursuant to 28 U.S.C. § 1402, quiet title claims may only be heard in the district court where the property in question is located. The property whose title is being litigated in this case is located primarily in Nevada. Accordingly, this Court does not have jurisdiction to hear the Western Shoshone's quiet title counts,[8] and

---

7. The Indian Tucker Act grants the Court of Federal Claims jurisdiction to hear cases seeking judgments for money found due from the government to the Western Shoshone. *United States v. Mitchell* 463 U.S. 206, 214–216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (stating that the claim must be one for money damages against the United States). Under the Indian Tucker Act, the Court of Federal Claims "has the power to require an accounting in aid of its jurisdiction to render money judgment on [a] claim." *Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. United States* 174 Ct.Cl. 483 (1966). Since the Western Shoshone in this case are claiming a breach of trust which entitles them to an accounting, which, as their other counts indicate, they will use to obtain monetary damages, this Court finds that the Court of Federal Claims does have jurisdiction to hear the Western Shoshone's accounting count as a precursor for an award of money damages. The Western Shoshone may not cleverly circumvent jurisdiction of the Court of Federal Claims by asking for an declaratory judgment for an accounting which the Western Shoshone can then use to obtain money damages within the same suit. *Consolidated Edison Co. v. United States, Dept. of Energy* 247 F.3d 1378, 1385 (Fed.Cir.2001).

8. The Western Shoshone's pendant venue argument is moot as this Court does not have

in any event, finds under 28 U.S.C. § 1631 that it is in the interest of justice to transfer these claims to the United States District Court for the District of Nevada.

## ORDER

For the reasons set forth above, it is this 30th day of July, 2004 hereby:

**ORDERED** that the government's Motion to Transfer Counts II, IV, V, and VI to the Court of Federal Claims is **GRANTED**; and it is further

**ORDERED** that the government's Motion to Transfer Counts I and III to the United States District Court for the District of Nevada is **GRANTED**.

**SO ORDERED.**

jurisdiction to hear the plaintiff's accounting claim.